# 96 DTA 117

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL II, BAYAMON

EL PUEBLO DE PUERTO RICO
Peticionario

v.

PABLO MOJICA MARQUES
Recurrido

Núm. KLCE-95-01058

San Juan, Puerto Rico, a 17 de septiembre de 1996

Panel integrado por su presidenta, Jueza Ramos Buonomo
y los Jueces Cordero y Ortiz Carrión

Ortiz Carrión, Juez Ponente

### TEXTO COMPLETO DE LA RESOLUCION

El Procurador General de Puerto Rico solicita la revisión de una resolución del Tribunal de Primera Instancia, Sala Superior de Bayamón, en la cual se declara con lugar una moción de supresión de evidencia en un caso en que al acusado se le imputan varias violaciones al Artículo 401 de la Ley

de Sustancias Controladas, según enmendada, 24 L.P.R.A. sec. 2101 *et seq.*

El Procurador General plantea que el Tribunal de Primera Instancia erró: al determinar que el testimonio del Agente Tomás Core Figueroa fue estereotipado; al ignorar el testimonio del Agente Jorge L. Padró y las fotografías admitidas en evidencia; y al ordenar la supresión de toda la prueba incautada.

Antes de dilucidar las cuestiones planteadas por el Procurador General, es necesario revisar los hechos que dan lugar a la acusación contra el peticionario y el trasfondo procesal del caso.

## I

El Sr. Pablo Mojica Márques presentó el 19 de octubre de 1995 una moción solicitando la supresión de toda la evidencia en su contra. Alegó que esa evidencia fue obtenida a raíz de un registro irrazonable sin orden previa. Además, alegó que el testimonio del Agente Tomás Core Figueroa es increíble, y que fue prestado *"con el único objetivo de legalizar la evidencia ocupada ilegalmente sin orden de allanamiento"*. ■

El 21 de noviembre de 1995 se celebró una vista para dilucidar la referida solicitud de supresión. El 22 de noviembre de 1995, el tribunal *a quo* dictó la resolución declarando ha lugar la solicitud de supresión, cuya revisión solicita el Procurador General.

De la resolución recurrida y de la declaración jurada prestada por el Agente Tomás Core Figueroa el 18 de julio de 1995, según reproducida en la moción de supresión de evidencia, surgen los hechos pertinentes a las cuestiones planteadas. ■ A continuación exponemos los hechos consignados por el tribunal *a quo* en la resolución recurrida. ■

*" El agente Core declara que mientras estaban protegiendo a otros policías que diligenciaban una orden de allanamiento en el establecimiento "Villa Cruz". [sic] El Agente Padró le indica que lo acompañara [sic] a un área cercano [sic] llamado [sic] "La Placita", por ser un punto de drogas. Mientras se acercaban a este sector, el Agente Padró observa a un joven que sale del negocio "Saborea y Gana" y al percatarse de la presencia de éste, corre hacia adentro del negocio nuevamente.*

*El Agente Padró le informa al Agente Core de esta observación y le indica que seguirá al individuo por actuar sospechoso. Al entrar al Negocio "Saborea y Gana", encuentra cerca de un billar, en el piso una bolsa plástica con polvo blanco en su interior, y ve al joven en una esquina como a 20 ó 25 pies del billar, saliendo detrás de una mesa. Al buscar detrás de ésta, encuentra varios sobres conteniendo polvo blanco. Arresta al sospechoso, que luego resultó ser menor y no presentó querella contra éste. No ocupa droga ni arma alguna en la persona del menor.*

*Casi simulatáneamente [sic] está entrando al negocio el Agente Cora [sic] por instrucciones del Agente Padró. Declaró que al entrar al negocio habían clientes. El imputado, el Sr. Pablo Mojica Márques, quien de ninguna manera fue relacionado con el menor de edad, se encuentra parado frente a la barra, recostado de esta [sic] y que entre la barra y la pared habían tres sobres con polvo blanco en su interior, tirados en el piso. El Agente Core los ocupa y registra todo el negocio. Encuentra dentro de unas cajas de tabacos, en un tablillero, catorce (14) sobres con polvo blanco en su interior y $1,166.00 dólares, amarrados con gomitas. Diez bolsas resultaron positivas de heroína y sieta [sic] de cocaína.*

*El Agente Core conoce al imputado por el apodo de "pavejo"; entiende que es el dueño del negocio y que lo administraba en ese momento, aunque no había nadie atendiéndolo al momento de la intervención."*

Según surge de la resolución recurrida se admitieron en evidencia seis fotografías y la prueba de campo.

En la resolución recurrida, el tribunal *a quo* concluyó lo siguiente:

*"El Agente Cora [sic] entró al negocio, lo registró sin orden de allanamiento y sin motivos fundados. Recurre al testimonio estereotipado de evidencia a plena vista para justificar el registro de todo el negocio sin orden. El Tribunal no le dio credibilidad al testimonio del Agente Tomás Core, por ser estereotipado."*

Además, concluyó que el Ministerio Público no logró *"rebatir la regla general de que todo registro o incautación que se realice sin orden judicial previa, no importa su naturaleza penal o administrativa, es irrazonable".* Procedió entonces a declarar ha lugar la solicitud de supresión de evidencia presentada por el aquí recurrido.

## II

Los agentes Core Figueroa y Padró no necesitaban una orden judicial para entrar al negocio del Sr. Mojica Márques. Su entrada estuvo justificada bajo la teoría de la invitación pública. De hecho así surge de la propia resolución recurrida donde se afirma lo siguiente: *"No cuestionamos la autoridad de los agentes para entrar a un negocio abierto a la calle y operando como tal".*

Por otra parte, el Procurador General argumenta que la prueba presentada estableció la existencia de circunstancias excepcionales que eximen del cumplimiento con el requisito de orden judicial previa. Plantea que la existencia de esas circunstancias quedó establecida por el testimonio de los agentes Core Figueroa y Padró, por unas fotografías y por la prueba de campo; y alega que se trataba de evidencia ilegal a plena vista o producto de un registro incidental a un arresto.

Un registro o incautación sin orden judicial produce una presunción de invalidez que el Ministerio Público debe rebatir probando la existencia de circunstancias especiales que requirieron la intervención. *Pueblo v. Rivera Rivera,* 117 D.P.R. 283 (1986). *"Cuando [el registro o] la incautación se haya efectuado sin orden de un tribunal, el Estado puede demostrar los hechos particulares del caso que justifiquen la intervención policial." Pueblo v. Rivera Colón, supra.* Las circunstancias necesarias para validar registros, allanamientos o incautaciones sin orden previa son específicas y limitadas. *Pueblo v. Rivera Rivera, supra; Pueblo v. González Rivera,* 100 D.P.R. 651, 656 (1972).

Así, en *Pueblo v. Dolce,* 105 D.P.R. 422 (1976), el Tribunal Supremo reconoce una excepción al requisito de orden previa. Se trata de la doctrina de evidencia ilegal a plena vista. Otra de las excepciones que la jurisprudencia ha reconocido para validar una intervención sin orden judicial previa, es cuando se da un registro incidental a un arresto válido. ■

En el caso de autos, si bien los agentes podían incautar sin orden aquella evidencia ilegal, descubierta a plena vista o la obtenida como resultado de un registro incidental a un arresto, este planteamiento exige una determinación de hechos basadas en un juicio de credibilidad. Precisamente, el magistrado que presidió la vista de supresión de evidencia hizo una determinación a los efectos de que la declaración del Agente Core Figueroa no le mereció credibilidad alguna. ■ Así surge de la resolución recurrida donde el tribunal *a quo* concluye que el Agente Core Figueroa recurre al testimonio estereotipado de evidencia a plena vista para justificar el registro de todo el negocio sin orden y que por ello no le dio credibilidad. La jurisprudencia de Puerto Rico define el concepto de testimonio estereotipado como *"aquel que se limita a establecer los elementos mínimos del delito sin que se incluyan detalles imprescindibles para reforzarlos". Pueblo v. Rivera Rodríguez,* **89 J.T.S. 33,** pág. 6698. El Tribunal Supremo ha señalado que al evaluar un alegado testimonio estereotipado, deben seguirse las siguientes pautas:

*"a) debe escudriñarse con rigor;*

*b) los casos de evidencia abandonada o de acto ilegal a plena vista deben inducir a sospecha;*

*c) si es inherente, irreal o improbable debe rechazarse;*

*d) debe aplicársele los factores enumerados en Pueblo v. Ayala Ruiz,* 93 D.P.R. 704, 708 (1966);

*e) ante la existencia de contradicciones, lagunas o vaguedades debe examinarse con recelo;*

*f) es el fiscal quien tiene el peso de la prueba para liberar al testimonio de la sospecha de ser estereotipado." Pueblo v. Rivera Rodríguez, supra.*

En *Pueblo v. Espinet,* 112 D.P.R. 531, 537 (1982), el Tribunal Supremo señala que el mero hecho de que se ateste que la evidencia fue descubierta a simple vista o que haya sido abandonada no implica que se trate de un testimonio estereotipado. La clasificación de un testimonio como estereotipado depende de que el mismo se limite a los elementos mínimos del delito.

Por otro lado, el Tribunal Supremo ha reconocido que si bien es cierto que la sospecha de la existencia de testimonio estereotipado, debe escudriñarse con especial rigor, ello no significa que dicho testimonio deba descartarse siempre. Reiteradamente se ha resuelto que el tribunal que tenga ante sí este tipo de testimonio debe rechazarlo si el mismo es inherentemente irreal e improbable. *Pueblo en interés de los menores A.L.R.G. y F.R.G.,* **93 J.T.S. 39;** *Pueblo v. González del Valle,* 102 D.P.R. 374 (1974); *Pueblo v. Ayala Ruiz, supra.* También se ha indicado que el testimonio estereotipado puede perder tal condición cuando, contiene detalles más allá de los datos indispensables para probar los requisitos mínimos de un delito; se le rodea de las circunstancias en que funciona el agente; el término de su investigación; los resultados obtenidos fuera del caso en trámite y otros detalles. *Pueblo en interés de los menores A.L.R.G. y F.R.G., supra.*

Analizado con rigor el testimonio del Agente Core Figueroa, coincidimos con la conclusión del tribunal *a quo.* Existen lagunas e imprecisiones en el mismo sobre la localización de la evidencia incautada. De hecho parece improbable el que parte de la evidencia se haya encontrado a plena vista, en particular, aquella que atestó haber visto entre la pared y la barra. Asimismo existe vaguedad en cuanto a la sucesión de eventos una vez entra al negocio del aquí recurrido. En fin, estamos ante un testimonio *"flaco y descarnado"* carente de detalles y lleno de imprecisiones.

Además, en el ejercicio de nuestra función revisora no debemos intervenir con la apreciación y adjudicación de credibilidad que en relación con la prueba testifical haya realizado el juzgador de los hechos en ausencia de un planteamiento de pasión, prejuicio, parcialidad o error manifiesto. Sabido es que las determinaciones de hecho del juzgador son merecedoras de gran deferencia por parte del tribunal apelativo pues, de ordinario, el tribunal *a quo* está en mejor posición para aquilatar la prueba testifical desfilada, ya que fue éste quien oyó y vio declarar a los testigos. *Pueblo v. Rivera Robles, supra; Pueblo v. Maisonave Rodríguez,* **91 J.T.S. 67,** pág. 8838; *Pueblo v. Rivero, Lugo y Almodóvar,* 121 D.P.R. 454, 473 (1988); *Pueblo v. Bonilla Romero, supra,* pág. 111; *Pueblo v. Cabán, supra,* pág. 654.

Por otra parte, el Procurador General sostiene el testimonio del Agente Core Figueroa fue corroborado por el Agente Padró y por unas fotografías. De la resolución recurrida nada surge en cuanto a la credibilidad o valor probatorio que le mereció al juzgador esa evidencia presentada. ■ Si merece o no credibilidad lo testificado por el Agente Padró y si procede o no la supresión de la evidencia localizada por éste, debe dirimirlo el juzgador de los hechos.

De igual forma, si las fotos tomadas al momento de los hechos avalan su testimonio.

Por último, debe puntualizarse que un tribunal no tiene autoridad en ley para emitir un *"fallo absolutorio"* en una vista señalada para la discusión de una moción de supresión de evidencia ya que dicho fallo sólo puede ser emitido en el contexto de un juicio. Cualquier pronunciamiento a esos efectos dentro de una vista de supresión es improcedente. Así lo resolvió el Tribunal Supremo de Puerto Rico en *Pueblo v. Rivera Rivera, supra,* págs. 290-91. ■

Por los fundamentos expuestos, se expide el auto solicitado y se confirma la resolución recurrida en lo relativo a la evidencia incautada y suprimida como resultado del testimonio del Agente Core Figueroa. Sin embargo, se deja sin efecto la supresión de la prueba incautada como resultado del testimonio del agente Padró y se devuelve el caso para que el tribunal *a quo* adjudique la credibilidad que le merece el testimonio del Agente Padró y las fotografías presentadas por el Ministerio Público y determine si procede o no la supresión de la evidencia incautada a base del testimonio de dicho agente.

Lo acuerda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

## ESCOLIOS 96 DTA 117

**1.** Véase págs. 10-12 del apéndice que acompaña al recurso presentado por el Procurador General de Puerto Rico.

**2.** El Procurador General no sometió una exposición de la prueba oral. Pretende suplir un resumen de las versiones ofrecidas por los agentes en la vista de supresión de evidencia, hecho en la moción de reconsideración que le fuera presentada al tribunal *a quo* tras haberse declarado ha lugar la solicitud de supresión de evidencia. Ese resumen no cumple con la Regla 40 de las del Tribunal de Circuito de Apelaciones. De tal forma, sólo consideramos el resumen de los hechos que se hace en la resolución recurrida.

**3.** De la resolución recurrida surge que el Ministerio Público presentó como testigos al Agente Tomás Core Figueroa y al Agente Jorge L. Padró. Si bien la resolución contiene los hechos pertinentes a las cuestiones planteadas, no identifica claramente los hechos relatados por el Agente Core Figueroa y los hechos relatados por el Agente Padró.

**4.** Véase *Maryland v. Macon,* 472 U.S. 463 (1985); *Pueblo en interés del menor N.R.O.,* **94 J.T.S. 118**; *Pueblo v. López López,* **91 J.T.S. 76**; *Pueblo v. Ríos Colón,* **91 J.T.S. 66**; *Pueblo v. Rivera Colón,* **91 J.T.S. 61.**

En *Pueblo v. Dolce, supra,* el Tribunal Supremo enumera los siguientes requisitos para la aplicación de esta doctrina:

" *(1) el artículo ocupado debe haberse descubierto por plena vista o percepción del agente y no en el estar a curso o por razón de un registro;*

*(2) el agente que observa la prueba debe haber tenido derecho previo a estar en la posición desde la cual podía verse la prueba;*

*(3) debe descubrirse el objeto inadvertidamente, y*

*(4) la naturaleza delictiva del objeto debe surgir de la simple observación. "*

Véase además, *Pueblo en interés del menor N.R.O., supra,* pág. 151; *Pueblo v. Malavé González, supra* ,120 D.P.R. 470 (1988).

Para un análisis de estos requisitos, véase Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, 1ra. ed., Colombia, Forum, 1991, Vol. I, págs. 434-440.

Unicamente cuando el arresto realizado es legal es que puede entrarse a considerar si el registro incidental al arresto es o no razonable. *Pueblo v. Bonilla Romero,* 120 D.P.R. 92 (1987). Ante tal eventualidad se ha determinado que es razonable el registro sin orden de la persona del arrestado y del área que está a su alcance inmediato, para ocupar armas que puedan ser empuñadas y utilizadas por el arrestado para agredir a los agentes del orden público o para intentar una fuga y para ocupar evidencia que de otro modo el arrestado pudiera destruir. *Pueblo v. Costoso Caballero,* 100 D.P.R. 147 (1971). En cuanto al registro incidental del área donde se arresta a la persona, el Tribunal Supremo de Puerto Rico ha resuelto que no es permisible un registro sin orden de allanamiento, aunque sea contemporáneo con un arresto válido, de aquellos lugares y muebles de una casa que no estén al alcance de la persona arrestada. *Pueblo v. Riscard,* 95 D.P.R. 405 (1967). Véase además *Chimel v. California,* 395 U.S. 752 (1969).

**5.** Sobre el particular, en *Pueblo v. Bonilla Romero, supra,* el Honorable Tribunal Supremo de Puerto Rico resolvió que el magistrado que preside una vista de supresión de evidencia al amparo de la Regla 234 de las de

Procedimiento Criminal está facultado para adjudicar y dirimir credibilidad en la misma. Véase también *Pueblo v. Maldonado Rivera,* **94 J.T.S. 39.**

**6.** Según señalamos previamente, de la resolución recurrida no surge claramente cuáles hechos fueron narrados por uno o por otro de los agentes. No obstante, sí surge que el Agente Padró *"[a]l entrar al Negocio "Saborea y Gana", encuentra cerca de un billar, en el piso una bolsa plástica con polvo blanco en su interior, y ve al joven en una esquina como a 20 ó 25 pies del billar, saliendo detrás de una mesa. Al buscar detrás de ésta, encuentra varios sobres conteniendo polvo blanco. Arresta al sospechoso, que luego resultó ser menor y no presentó querella contra éste. No ocupa droga ni arma alguna en la persona del menor".* Además, surge que se presentaron en evidencia seis fotografías.

**7.** Ese sería el caso de lo señalado por el tribunal *a quo* en la resolución recurrida a los efectos de que *"[n]o se estableció que la evidencia que se encontró en el piso (los primeros tres sobres, entre la pared y el "counter") estuvieran bajo el control o dominio del acusado".* Véase, pág. 2 de la Resolución de 22 de noviembre de 1995.